UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERIC C. CAREN; and CAREN ARCHIVE, INC.,

                              Plaintiffs,                    1:15-CV-0864
                                                            (GTS/DJS)

v.

HARRY B. COLLINS, JR.; RAYMOND A.
COLLINS; MEREDITH COLLINS APPLEGATE;
and BROWN BROTHERS LLP,

                              Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

RUPP BAASE PFALZGRAF CUNNINGHAM, LLC          R. ANTHONY RUPP, III, ESQ.
  Counsel for Plaintiffs                      PHILLIP A. OSWALD, ESQ.
1600 Liberty Building
424 Main Street
Buffalo, NY 14202

TULLY RINCKEY, PLLC                           DAVID A. FALLON, ESQ.
  Counsel for Defendants
441 New Karner Rd.
Albany, NY 12205

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

       Currently before the Court, in this breach of contract action filed by Eric C. Caren and

Caren Archive, Inc. ("Plaintiffs") against Harry B. Collins, Jr., Raymond A. Collins, Meredith

Collins Applegate, and Brown Brothers, LLP ("Defendants"), are Defendants' motion to dismiss

Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to

Fed. R. Civ. P. 12(b)(6) (Dkt. No. 14) and Plaintiffs' cross-motion for leave to file an Amended

Complaint pursuant to Fed. R. Civ. P. 15(a)(2) (Dkt. No. 20).  For the reasons set forth below,

Defendants' motion is granted and Plaintiffs' cross-motion is denied.

# I.    RELEVANT BACKGROUND

Generally, liberally construed, Plaintiffs' Complaint alleges as follows.  Plaintiff Eric Caren ("Plaintiff Caren") is the sole owner of Plaintiff Caren Archive, Inc. ("Plaintiff Caren Archive").  (Dkt. No. 1, ¶ 5 [Pls.' Compl.].)  Plaintiff Caren Archive is the most significant private collection of rare newspapers and broadsides in the United States and includes original and historic newspapers, periodicals, manuscripts, and photographs.  (*Id.*)  Defendants own the Brown Brothers photographic archive ("Brown Brothers Archive"), which is the oldest stock photograph agency in the United States, having been founded in 1904.  (*Id.*, ¶ 12.)

At some point in time, Defendants became interested in selling the Brown Brothers Archive.  (*Id.*, ¶ 13.)  Before October 2014, Plaintiff Caren met with Defendant Raymond Collins to discuss the purchase of photographs from the Brown Brothers Archive.  (*Id.*, ¶ 16.)  Thereafter, Plaintiff Caren continued to have meetings and discussions with Defendant Collins as well as with Defendant Harry Collins to negotiate the possibility of having him represent Defendants in brokering and obtaining purchasers for the Brown Brothers Archive.  (*Id.*, ¶ 17.)  During this time period (i.e., before October 2014), Defendants made numerous representations, including those on their website, that there were more than ten million pieces in the Brown Brothers Archive's historical collection.  (*Id.*, ¶ 14.)  These representations were also made to Plaintiff Caren during the course of their negotiations.  (*Id.*, ¶ 18.)  However, at the time that Defendants made these representations, they knew that they were false and grossly inflated exaggerations.  (*Id.*, ¶ 15.)

Based upon these explicit representations, Plaintiff Caren agreed to broker and obtain purchasers for the sale of the Brown Brothers Archive.  (*Id.*, ¶ 19.)  On October 20, 2014, Plaintiff Caren, in his capacity as the principal of Plaintiff Caren Archive, entered into a contract

with Defendants. (*Id.*, ¶ 20.) The terms of the contract provided, among other things, that Plaintiffs had the right to serve as the sole and exclusive broker for the sale of the Brown Brothers Archive for a period of one year from October 20, 2014. (*Id.*, ¶¶ 20-21; Ex. A.) After executing the contract, Plaintiff Caren proceeded in good faith to fulfill his obligations in his representation of Defendants by widely publicizing the importance of the Brown Brothers Archive and its availability for purchase as well as contacting potential buyers. (*Id.*, ¶ 22.) In the process of fulfilling these obligations, Plaintiff Caren provided to the public, media, and potential buyers the erroneous number of items in the Brown Brothers Archive's collection, which had been given to him by Defendants. (*Id.*, ¶ 23.) Plaintiff Caren eventually learned that Defendants had grossly misrepresented this number. (*Id.*, ¶ 24.)

During Plaintiff Caren's representation, Defendants failed to meet with, and otherwise entertain, bona fide potential buyers who had become interested in the Brown Brothers Archive through Plaintiff Caren's efforts. (*Id.*, ¶ 28.) On March 27, 2015, Plaintiff Caren received correspondence on behalf of Defendants that they were no longer honoring their contract with him. (*Id.*, ¶ 25.) Defendants breached their contract with Plaintiffs by entering into a contract with a buyer without using Plaintiffs as a broker despite Plaintiffs' exclusive right to serve as the broker for the deal. (*Id.*, ¶ 29.)

Based upon the foregoing allegations, the Complaint asserts the following four claims: (1) a claim that Defendants breached their contract with Plaintiffs by (i) failing to act in good faith and refusing to meet with potential buyers that became interested in purchasing the Brown Brothers Archive through Plaintiff Caren's efforts; (ii) entering into a contract with a buyer without using Plaintiffs as a broker despite their exclusive right to serve as broker for the deal;

and (iii) unilaterally abrogating the contract; (2) a claim that Defendants fraudulently induced

Plaintiffs into entering a contract by knowingly, repeatedly, and falsely representing that the

Brown Brothers Archive contained more than ten million pieces in its collection; (3) a claim that

Defendants' actions constitute fraud; and (4) a claim that Defendants were unjustly enriched

because they received the benefit of Plaintiffs' services without compensating them for those

services and/or paying the commission due to them for the eventual sale of the Brown Brothers

Archive.  (*Id.*, ¶¶ 26-54.)

## II.     PARTIES' BRIEFING ON THEIR RESPECTIVE MOTIONS

### A.     Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert four arguments with regard to

Plaintiffs' claims against them.  (Dkt. No. 14, Attach. 2 [Defs.' Mem. of Law].)

First, Defendants argue that Pennsylvania law should be applied to adjudicate Plaintiffs'

contract claims, because (1) the contract contains a choice-of-law provision specifying that the

contract "shall be interpreted according to the laws of the Commonwealth of Pennsylvania," and

(2) a substantial relationship exists between Pennsylvania, the parties, and the contract (in that

both Defendant Brown Brothers and its Archive are located in Pennsylvania).  (*Id.* at 6-7.)[1]

However, Defendants argue that Pennsylvania law would not govern any extra-

contractual claims asserted by Plaintiffs (such as fraud) if (1) there is an actual conflict between

the laws of New York and Pennsylvania, and (2) New York has a greater interest than

Pennsylvania in the litigation.  (*Id.* at 6-9.)  Defendants argue that, in this case, the only actual

---

[1]     Page citations refer to the page numbers used on CM/ECF rather than the actual
page numbers contained in the parties' respective motion papers.

conflict of law relevant to their motion is the application of the parol evidence rule to Plaintiffs'

claims sounding in fraud.  (*Id.*)  Nonetheless, Defendants argue that, under New York's "interest

analysis," the parties' significant contacts with Pennsylvania dictate that Pennsylvania law

should be applied to Plaintiffs' extra-contractual claims.  (*Id.*)

Second, Defendants argue that the Complaint fails to allege facts plausibly suggesting

that they breached any specific duty owed to Plaintiffs under the contract and instead contains

only conclusory statements and naked assertions.  (*Id.*)  More specifically, Defendants argue that

the contract does not contain any provisions which obligated them to meet with and otherwise

entertain potential buyers; rather, the contract mandates that Plaintiff Caren was obligated to

engage in such activities.  (*Id.* at 10-11.)

Furthermore, Defendants argue that the Complaint fails to allege facts plausibly

suggesting that they violated the exclusivity provision of the contract by entering into a purchase

agreement with another buyer without using Plaintiffs as the broker (e.g., omitting such facts as

the date of the alleged breach or the identity of the alleged buyer).  (*Id.* at 11-12.)

Finally, Defendants argue that, according to the Complaint's own factual allegations,

they could not have unilaterally abrogated the contract on March 27, 2015, because (1) the

contract provides that it will become null and void if Plaintiffs fail to procure a viable potential

purchaser within ninety days of its execution, and (2) the Complaint does not allege that

Plaintiffs procured a viable potential purchaser within the ninety-day period specified in the

contract (i.e., by January 18, 2015).  (*Id.* at 12-13.)

Third, Defendants argue that the Complaint fails to allege facts plausibly suggesting

claims for fraud and fraud in the inducement for the following four reasons: (1) the claims fail to

satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b); (2) the revised contract, which was omitted from the Complaint, conclusively establishes that Defendants cured any misrepresentations and thus Plaintiffs have failed to state a claim for fraud and fraud in the inducement; (3) even assuming that these claims have been sufficiently stated, they are barred by the parol evidence rule because (a) the contract is fully integrated (or merged) and expressly disclaims the parties' reliance on any prior oral representations, (b) the contract contains terms that deal directly with the subject matter of the alleged misrepresentations, and (c) the contracting parties are sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract; and (4) the nature of the contract, Plaintiffs' status as a sophisticated party, and the presence of a merger clause in the contract render any reliance on the alleged prior oral representations unreasonable as a matter of law (given Plaintiff Caren's status as a sophisticated party, the magnitude of the contract, and the merger clause expressly disclaiming all prior representations).  (*Id.* at 13-23.)

Fourth, and finally, Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed as duplicative of the breach of contract claim because (1) the unjust enrichment claim is based upon the same facts and/or allegations serving as the basis for the breach of contract claim, and (2) both claims seek identical relief, i.e., the commission Plaintiffs' were allegedly entitled to under the contract.  (*Id.* at 24-25.)

### B. Plaintiffs' Opposition Memorandum of Law and Memorandum of Law in Support of Their Cross-Motion for Leave to File and Serve an Amended Complaint

Generally, Plaintiffs make the following five arguments in opposition to Defendants' motion to dismiss and in support of their cross-motion seeking leave to file and serve an Amended Complaint.

First, Plaintiffs argue that the Complaint states a prima facie claim for breach of contract because it alleges facts plausibly suggesting that Defendants breached their duty of good faith and fair dealing by repeatedly refusing to entertain any communications with potential buyers and from Plaintiff Caren. (Dkt. No. 20, Attach. 2, at 5-8 [Pls.' Opp'n Mem. of Law].) In support of this argument, Plaintiffs argue that, although the Supreme Court of Pennsylvania has not expressly adopted the Restatement (Second) of Contracts § 205, which imposes a duty of good faith and fair dealing in every contract, that section was expressly adopted by a Pennsylvania appellate level court in *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992), and held to apply by another federal court sitting in diversity jurisdiction in *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 629-30 (M.D. Pa. 2009) (applying Pennsylvania State law). (*Id.* at 6-7.) Accordingly, Plaintiffs argue that this Court, in fulfilling its obligations under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), should likewise hold that the Supreme Court of Pennsylvania would adopt § 205 if presented with the issue and that the Complaint alleges facts plausibly suggesting that Defendants breached their duty of good faith and fair dealing. (*Id.* at 6-8.)

Second, Plaintiffs argue that the Complaint's allegations related to their fraud claim satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) because (1) the Complaint alleges that Defendants engaged in fraudulent conduct on an ongoing basis during the months leading up to the contract's execution by grossly misrepresenting the number of items in the Archive's collection, and (2) Plaintiffs relied on Defendants' misrepresentations to their detriment by entering into the contract. (*Id.* at 8-9.)

Third, Plaintiffs argue that their claim for fraud in the inducement should not be dismissed because (1) it is not barred by the "gist of the action" doctrine,[2] and (2) the parol evidence rule is not applicable in this case because, under *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 546 (Pa. Super. Ct. 2005), Pennsylvania law requires that the contract's terms *expressly* deny the particular misrepresentation and the contract in this case does not contain any such terms. (*Id.* at 10-11.)

Fourth, Plaintiffs argue that their unjust enrichment claim should not be dismissed because, should the contract be found unenforceable due to Defendants' alleged fraudulent conduct, their unjust enrichment claim will not be duplicative of their claim for breach of contract. (*Id.*)

Fifth, and finally, Plaintiffs argue that they should be permitted leave to file and serve an Amended Complaint because their proposed amendments to the Complaint will not prejudice Defendants in any way. (*Id.* at 11-13.)

### C. Defendants' Reply Memorandum of Law and Opposition to Plaintiffs' Cross-Motion

Generally, Defendants make the following four arguments in reply to Plaintiffs' opposition memorandum of law and in opposition to their cross-motion seeking leave to file and serve an Amended Complaint.

---

[2]     "[U]nder Pennsylvania law, tort claims are precluded if the 'gist of the action' sounds in contract rather than tort. . . . A tort claim is maintainable if it alleges conduct that is 'primarily tortious,' and a contract is merely collateral." *Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, 06-CV-0871, 2007 WL 951565, at *3 (N.D.N.Y. Mar. 27, 2007) (Scullin, J.).

First, with regard to Plaintiffs' breach of contract claim, Defendants argue that (1) Plaintiffs have effectively conceded the merits of Defendants' challenges to the second and third grounds for that claim (i.e., that Defendants breached the exclusivity provision of the contract by entering into a contract with a buyer without using Plaintiff Caren as the broker and that Defendants unilaterally abrogated the contract), because Plaintiffs have opposed only Defendants' challenge to the first ground for that claim (i.e., that Defendants breached their duty of good faith and fair dealing), and (2) with regard to Defendants' challenge to the first ground for that claim, the proposed Amended Complaint does not remedy the defects in the original Complaint, because (a) it continues to fail to identify the potential buyer with whom Defendants allegedly failed to meet and/or the approximate date or location of the alleged refusal, and (b) in any event, it continues to fail to identify a specific provision of the contract imposing on Defendants a duty to "communicate to meet with" potential buyers. (Dkt. No. 21, Attach. 1, at 3-9 [Defs.' Reply Mem. of Law].)

Second, Defendants argue that Plaintiffs appear to agree that Pennsylvania law should govern their extra-contractual claims as well as the parol evidence analysis because (1) they outlined the choice of law issues attendant to Plaintiffs' extra-contractual claims in their motion to dismiss and argued that Pennsylvania law should govern those claims, and (2) in opposition to their motion, Plaintiffs did not directly address the choice of law issue but proceeded to analyze the extra-contractual claims exclusively under Pennsylvania law. (*Id.* at 9.)

Third, Defendants argue that the proposed Amended Complaint does not cure the deficiencies in Plaintiffs' claims for fraud and fraud in the inducement for four reasons: (1) the claims are barred by Pennsylvania's parol evidence rule, because (a) that rule does not, in fact, require that the terms of the contract expressly deny the particular misrepresentation (as stated

by *Youndt*), and (b) the contract contains terms that directly deal with the subject matter of the alleged oral representations; (2) the presence of an integration clause expressly disclaiming all prior representations makes any reliance on the alleged prior representations unreasonable as a matter of law, because (a) the merger clause contained in the contract makes any reliance on prior oral representations unreasonable as a matter of law, (b) Plaintiffs are sophisticated parties that could have structured the contract so that the Brown Brothers Archive was appraised before executing the contract, (c) Plaintiffs could have requested that the contract provide additional recitals regarding the scope and value of the Brown Brothers Archive, and (d) Plaintiffs could have revised the contract language or refused to enter into an agreement if they believed that the contract did not accurately recite all of the material representations relevant to the agreement or if Plaintiff Caren believed that he had not fully investigated the value of the Brown Brothers Archive; (3) the claims fail to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), because (a) the proposed Amended Complaint fails to provide specific information, such as which individual defendant made the alleged misrepresentations regarding the number of photographs in the Brown Brothers Archive or the location of the alleged conversation, (b) the only time period provided for the alleged conversation is "at least several months prior to October 2014," which is impermissibly vague, and (c) the only fraudulent statement that has been described with any specificity is a statement from the Brown Brothers public website regarding the number of items in the Brown Brothers Archive's collection; and (4) the contract amendment of November 1, 2014, which was omitted from the Complaint and incorporated by referenced in the proposed Amended Complaint, conclusively establishes that Plaintiffs have failed to state a claim for fraud, because they have not alleged, and cannot allege, facts plausibly

suggesting that they have been proximately harmed by the alleged misrepresentations. (*Id.* at 10-15.)

Fourth, and finally, Defendants argue that Plaintiffs' unjust enrichment claim is duplicative of their breach of contract claim for the reasons discussed in their memorandum of law. (*Id.* at 15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Legal Standard Governing Dismissal for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F.

Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim,

-12-

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.  *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72

## B. Legal Standard Governing Motions for Leave to Amend

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs, Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir. 2002]). Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted. *See Annunziato*, 293 F.R.D. at 333 (citations omitted). As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

---

(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

129, 131 (2d Cir.1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL

599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend

where it appears that amendment would prove to be unproductive or futile.") (citation omitted);

*see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where

amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The

problem with Cuoco's causes of action is substantive; better pleading will not cure it.

Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation

omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course,

where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be

dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810

(2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend

should be denied").[4]

# IV.    ANALYSIS

## A.    Whether Pennsylvania Law Governs Plaintiffs' Contract and Extra-contractual Claims

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 14, Attach. 2, at 6-7 [Defs.'

---

[4]    The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  Thus, this standard does not appear to be an accurate recitation of the governing law.

Mem. of Law]; Dkt. No. 21, Attach. 1, at 9 [Defs.' Reply Mem. of Law].)  To those reasons, the

Court adds the following analysis, which is intended to supplement and not supplant Defendants'

reasons.

As Defendants correctly note in their reply memorandum of law, they went to great

length in their motion to dismiss to outline the choice-of-law issues attendant to Plaintiffs' extra-

contractual claims while arguing that Pennsylvania law should govern those claims.  (Dkt. No.

21, Attach. 1, at 9 [Defs.' Reply Mem. of Law].)  Conspicuously absent from Plaintiffs'

opposition memorandum of law is any opposition to this argument.[5]  Indeed, rather than oppose

this argument, Plaintiffs proceeded to analyze their extra-contractual claims exclusively under

Pennsylvania law.  (Dkt. No. 20, Attach. 2, at 8-11 [Pls.' Opp'n Mem. of Law].)  Under these

circumstances, courts in this Circuit have held that a choice-of-law analysis is unnecessary

because the parties have consented to the application of the state's substantive laws relied upon

in their briefs.  *See Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The

parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to

establish choice of law.") (internal quotation marks omitted); *accord*, *Alphonese Hotel Corp. v.

Tran*, 14-CV-3447, 2016 WL 3675321, at *3 (2d Cir. July 11, 2016); *see also Guardian Life Ins.

Co. v. Gilmore*, 45 F. Supp. 3d 310, 323 (S.D.N.Y. 2014) (stating that "conduct indicating the

parties' consent to a given state's substantive law can consist of the cases cited and relied upon

---

[5]     In this District, when a non-movant willfully fails to oppose a legal argument
asserted by a movant, the movant's burden with regard to that argument is lightened, such that,
in order to succeed on that argument, the movant need only show that the argument possess
facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y.
L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the
moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak
v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.)
(collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3
(N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

by the parties in their briefs") (internal quotation marks omitted) (collecting cases).

Accordingly, the Court finds that Plaintiffs have consented to the application of Pennsylvania law for purposes of adjudicating their claims.

**B.     Whether Plaintiffs' Breach of Contract Claim Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 14, Attach. 2, at 10-11 [Defs.' Mem. of Law]; Dkt. No. 21, Attach. 1, at 4-7 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis, which again is intended to supplement and not supplant Defendants' reasons.

Defendants correctly note in their reply memorandum of law (Dkt. No. 21, Attach. 1, at 3 [Defs.' Reply Mem. of Law]) that Plaintiffs have failed to oppose dismissal of the second and third bases of their breach of contract claim.  As stated above in note 6 of this Decision and Order, in this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  The Court finds that, under the circumstances, Plaintiffs had due notice of their duty to oppose such legal arguments if they wished them to be considered by the Court as challenged.  More specifically, Plaintiffs' counsel, who is an attorney admitted to practice in this Court, certified that he read and understands the District's local rules.  Furthermore, the Court finds that, at the very least, Defendants have met their modest threshold burden with respect to dismissal of the breach of contract claim on the second and third bases alleged in the Complaint (Dkt. No. 1, ¶¶ 29-30 [Pls.' Compl.]).  In any

event, the Court would grant this portion of Defendants' motion to dismiss even if it were to subject those arguments to the more rigorous scrutiny appropriate for a contested motion, for the reasons set forth in Defendants' memoranda of law.  (Dkt. No. 14, Attach. 2, at 11-13 [Defs.' Mem. of Law]; Dkt. No. 21, Attach. 1, at 8-9 [Defs.' Reply Mem. of Law].)

The Court notes that, even if the unidentified "bona fide potential buyers" alleged in Paragraph 28 of the Complaint included a "viable potential purchaser" as required by Paragraph 5 of the Contract, the Complaint is conspicuously absent of any factual allegation plausibly suggesting that (1) Plaintiffs "brought" the viable potential purchaser to Defendants rather than simply "contacting" that potential purchaser (as alleged in Paragraph 23 of the Complaint), and (2) the viable potential purchaser was brought to Defendants within ninety days of the execution of the Contract (as required by Paragraph 5 of the Contract).  Indeed, it appears that Plaintiffs merely (at an unidentified time) instructed "potential buyers and others interested in the Archive" to communicate with Defendants directly.  (Dkt. No. 20, Attach. 5, at ¶ 29 [Pls.' Proposed Am. Compl.].)

Turning to Plaintiffs' argument that Defendants breached their duty of good faith and fair dealing, the Court finds that the Complaint fails to allege facts plausibly suggesting such a breach.  Under Pennsylvania law,

> a breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of good faith. . . . The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties.  In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations.  In determining whether there has been a breach of contract, we evaluate the conduct of a party through the lens of good faith and fair dealing.

*Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 471-72 (Pa. Super. Ct. 2015); *accord*, *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 430 (E.D. Pa. 2015); *Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 560 (M.D. Pa. 2014). "In other words, a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*, and that resultant damages were incurred by plaintiff." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009).

In the present case, the Court agrees with Defendants that Plaintiffs have failed to identify a specific duty imposed by the contract that required Defendants to meet with and/or entertain bona fide potential buyers. Indeed, as Defendants correctly note, the contract states that "[a]ny negotiations and potential purchasers shall be deemed proprietary for Caren, and all negotiating will be done with the potential purchasers through Caren, *exclusively*." (Dkt. No. 1, Attach. 1, at ¶ 5 [Contract]) (emphasis added). In addition to Plaintiffs' failure to point to a specific contractual provision in support of their argument, the Court has carefully reviewed the remaining provisions of the contract and has been unable to identify any contractual term that contemplates that Defendants would communicate with or meet potential buyers. Accordingly, for all of the foregoing reasons, Plaintiffs have failed to allege facts plausibly suggesting that Defendants breached their duty of good faith and fair dealing in performing the contract. *See Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 62 (3d Cir. 2013) (holding that "Appellants' arguments fail because they do not account for the requirement under Pennsylvania law that a duty of good faith and fair dealing in a breach of

contract claim *must always be grounded in a specific provision of a contract*") (emphasis added);

*W. Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 170 (3d Cir.

2013) (stating that "there must be some relationship to the provisions of the contract itself to

invoke the duty of good faith" and that "the duty of good faith and fair dealing does not license

courts to interpose contractual terms to which the parties never assented"); *Abraham v. Ocwen*

*Loan Serv., LLC*, 14-CV-4977, 2016 WL 2866537, at *8-9 (E.D. Pa. May 17, 2016) (dismissing

breach of contract and good faith and fair dealing claims because "Plaintiffs fail to cite to any

contract language in their Notes or Mortgages containing such a provision setting forth stated

amortization periods upon which their breach of contract claim purports to rely"); *Andrichyn v.*

*TD Bank, N.A.*, 93 F. Supp. 3d 375, 384-87 (E.D. Pa. 2015) (dismissing breach of contract and

good faith and fair dealing claims where plaintiff failed to identify a specific contractual duty

breached by defendant).

### C. Whether Plaintiffs' Fraud and Fraud in the Inducement Claims Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memoranda of law. (Dkt. No. 14, Attach. 2, at 13 [Defs.'

Mem. of Law]; Dkt. No. 21, Attach. 1, at 9-15 [Defs.' Reply Mem. of Law].) To those reasons,

the Court adds the following analysis, which again is intended to supplement and not supplant

Defendants' reasons.

As discussed above in Part II.C. of this Decision and Order, Defendants argue that

Plaintiffs' fraud claims should be dismissed for the following four reasons: (1) the alleged

misrepresentations are barred by the parol evidence rule, (2) the contract is fully integrated and

expressly disclaims the parties' reliance on prior oral representations; (3) the claims fail to

satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b); and (4) the amendment to the

contract on November 1, 2014, conclusively establishes that Plaintiffs were not proximately

harmed by any alleged misrepresentations.  The Court will address these arguments below.

### 1.  Pennsylvania's Parol Evidence Rule and Plaintiffs' Fraud in the Inducement Claim

Under Pennsylvania law, "[w]here prior fraudulent representations are alleged, the parol

evidence rule bars such representations where the written agreement: (1) contains terms which

directly deal with the subject matter of the alleged oral representation; and (2) represents the

entire contract between the parties, particularly where the written agreement also contains an

integration clause." *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474,

489 (E.D. Pa. 2009); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 418 (2d Cir. 2006)

(tracing history of parol evidence rule in Pennsylvania as applied to fraud in the inducement

claims).

With respect to the first requirement, Plaintiffs argue, as discussed above in Part II.B. of

this Decision and Order, that the Court should apply the point of law from *Youndt*, which

requires that the terms of the contract to *expressly* deny the particular misrepresentation at issue

in order for the parol evidence rule to apply.  The Court agrees with Defendants, as well as with

the United States District Court for the Western District of Pennsylvania, that this requirement

"expresses an overly stringent view of the 'same subject matter' requirement." *Palermo Gelato,

LLC v. Pino Gelato, Inc.*, 12-CV-0931, 2013 WL 3147312, at *5 (W.D. Pa. June 19, 2013)

(stating that the rule expressed in *Youndt* is dicta).  In *Palermo*, the court considered *Youndt* and,

to the extent that the rule expressed in *Youndt* could be extended beyond its holding, the court

explicitly rejected it in favor of the analysis in *Atl. Pier Assocs*.  *Palermo*, 2013 WL 314712, at

*5.  In *Atl. Pier Assocs.*, the court surveyed Pennsylvania law and concluded that, "[t]o fulfill the

same subject matter requirement, the written contract need not directly contradict the prior representation, but rather need only relate to subjects that were specifically addressed in the written contract." *Atl. Pier Assocs*, 647 F. Supp. 2d at 489-90 (internal quotation marks omitted). Similarly, after discussing additional Pennsylvania Supreme Court cases not discussed in *Atl. Pier Assocs*., the *Palermo* court concluded that, "in Pennsylvania, the better view of the parol evidence rule in fraud in the inducement claims is that, at least in cases where a fully integrated contract is present, the 'same subject matter' requirement is a more modest one." *Palermo*, 2013 WL 314712, at *5.

Here, it is undisputed that the contract contains an integration clause. Specifically, the contract states as follows:

> All prior understandings, agreements, representations and warranties are merged in this Agreement, and it completely expresses the full agreement of both parties and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this Agreement.

(Dkt. No. 1, Attach. 1, at ¶ 10 [Contract].) The "same subject matter" requirement is also satisfied because the contract contains terms which deal directly with the subject matter of the alleged oral representation, i.e., the Brown Brothers Archive and its collection of historical items. Specifically, the contract identifies the assets to be sold as "the entire extensive collection of photographs, negatives, transparencies and computerized index." (*Id.* at 1.) Although this statement does not specify the number of items in the Brown Brothers Archive and describes the collection only as "extensive," the Court does not believe that this type of information is necessary in order to satisfy the "same subject requirement." *See Palermo*, 2013 WL 3147312, at *6 (stating that "it is enough that the contract relates to the subject matter of the gelato recipe in order for the parol evidence rule to operate and bar other representations on that topic–it need not carry terms that run *contrary* to those other representations, even implicitly").

In any event, Defendants correctly note that the contract provides that Plaintiff Caren will conduct an appraisal of the Brown Brothers Archive's assets that are for sale and that the contract is being entered into "after full investigation." (Dkt. No. 1, Attach. 1, at ¶¶ 2, 10 [Contract].) As discussed above in Part II.A. of this Decision and Order, the contract required this appraisal to be completed by October 26, 2014, which was six days after the contract was fully executed. After completing the appraisal, the first paragraph of the original contract was amended on November 1, 2014, to reflect Plaintiff Caren's valuation of the Archive. (Dkt. No. 20, Attach. 4 [Amendment to Contract].)[6] Accordingly, Plaintiffs' argument that it continued to rely on alleged prior representations that the Brown Brothers Archive contained more than ten million pieces in its collection even after Plaintiff Caren conducted his own appraisal (and then amended the contract to reflect his valuation) is spurious. Indeed, if Plaintiffs relied on these prior representations to their detriment, they should have ensured that those representations were embodied in the contract, especially when presented with an integration clause in the contract that expressly disclaimed any prior representations. *See Palermo*, 2013 WL 3147312, at *6 (stating that, "[i]f Palermo in fact relied on certain beliefs about the origins of the gelato it was purchasing, it could and should have ensured that those beliefs were embodied in the written Agreement between the parties"); *N. Am. Roofing & Sheet Metal Co. v. Bldg. & Constr. Trades*

---

[6]  The Court notes that this amendment was not attached to the Complaint but was attached as an exhibit to Plaintiffs' opposition memorandum of law and referenced in their proposed Amended Complaint. (Dkt. No. 20, Attach. 5, ¶ 28 [Pls.' Proposed Am. Compl.].) Under the circumstances, the Court may properly consider this document as not only incorporated by reference in the proposed Amended Complaint but integral to the proposed Amended Complaint because the proposed Amended Complaint relies heavily upon the document's terms and effect and clearly there is no dispute regarding its authenticity. Indeed, the Court would be inclined to find that the document was integral to the Complaint itself, given Plaintiffs' reliance on it in, *inter alia*, Paragraph 24 of the Complaint and Paragraph 1 of the contract attached to the Complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

*Council of Philadelphia & Vicinity*, 99-CV-2050, 2000 WL 230214, at *7 (E.D. Pa. Feb. 29, 2000) (dismissing a buyer's fraudulent inducement claim based on the parol evidence rule after noting that, if the buyer intended to rely on the seller's representations, it "should have insisted that the representation be set forth in the integrated written agreements"); *1726 Cherry Street P'ship by 1726 Cherry Street Corp. v. Bell Atl. Props., Inc.*, 439 Pa.Super. 141, 155 (Pa. Super. Ct. 1995) ("If the Lopatins intended to rely on what they now contend was a centrally important representation conveyed by Bell Atlantic in the course of the negotiations over a multimillion dollar commercial real estate transaction, then the Lopatins should have insisted that the representation be set forth in their integrated written agreement. They are now barred from eliciting parol evidence that they were fraudulently induced into entering the contracts.").

For all of the foregoing reasons, the Court finds that the alleged prior misrepresentations regarding the number of items in the Brown Brothers Archive's collection is barred by the parol evidence rule and Plaintiffs' fraud in the inducement claim is therefore dismissed.

### 2. Plaintiffs' Fraud Claim

The Court finds that Plaintiffs' fraud claim should also be dismissed for the reasons discussed above in Part IV.C.1. of this Decision and Order as well as for the reasons stated by Defendants in their memoranda of law. (Dkt. No. 14, Attach. 2, at 13 [Defs.' Mem. of Law]; Dkt. No. 21, Attach. 1, at 9-13 [Defs.' Reply Mem. of Law].) More specifically, the Supreme Court of Pennsylvania has stated that, "in Pennsylvania, *only fraud in the execution . . . is excepted from the parol evidence rule's operation*." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 206 (Pa. 2007) (emphasis added). "[F]raud in the execution occurs when deception causes a document to say something different than a party believes it to say. Accordingly, to prove fraud

in the execution, a plaintiff must allege that the parties agreed that certain terms would be included in the written contract, and that the terms were omitted by fraud, accident or mistake." *Nat'l Educ. Fin. Servs., Inc. v. U.S. Bank, Nat'l Ass'n*, 12-CV-6651, 2013 WL 6228979, at *8 (E.D. Pa. Dec. 2, 2013). Thus, "when fraud in the execution is alleged, representations made prior to contract formation are not considered superseded and disclaimed by a fully integrated written agreement, as they are when fraud in the inducement is asserted." *Toy*, 928 A.2d at 206-07.

Here, Plaintiffs have not alleged facts plausibly suggesting a claim for fraud in the execution and, therefore, the parol evidence rule applies. Indeed, the third cause of action in both the Complaint and proposed Amended Complaint is entitled "Fraud" and the allegations supporting that claim are essentially identical to those supporting Plaintiffs' fraud in the inducement claim. (*Compare* Dkt. No. 1, ¶¶ 33-37 [Pls.' Compl.] *and* Dkt. No. 20, Attach. 5, ¶¶ 38-43 [Pls.' Proposed Am. Compl.] *with* Dkt. No. 1, ¶¶ 42-46 [Pls.' Compl.] *and* Dkt. No. 20, Attach. 5, ¶¶ 47-51 [Pls.' Proposed Am. Compl.].) Specifically, both the fraud and fraud in the inducement claims allege that Defendants made misrepresentations regarding the number of pieces in the Brown Brothers Archive's collection before the contract was entered into. The only difference between these two sets of allegations is that the allegations supporting the fraud in the inducement claim allege that Defendants' misrepresentations induced Plaintiffs to enter into a contract while the allegations supporting Plaintiffs' fraud claim allege merely that this conduct constitutes fraud. Accordingly, the Court finds that Plaintiffs' allegations in their third cause of action are more properly characterized as a claim for common law fraud, which closely mirrors their claim for fraud in the inducement. *See Bray v. Dewese*, 07-CV-4011, 2008 WL 623824, at

*1 n.1 (E.D. Pa. Mar. 6, 2008) (stating that, "[u]nder Pennsylvania law, a claim for fraudulent inducement encompasses the same elements as a claim for common law fraud, but also requires an additional element–that the misrepresentation at issue was made with specific intent to induce another to enter into a contract when the person had no duty [to do so]. . . . Although Defendant titles one of his Counterclaims 'Fraudulent Inducement' and the other one 'Common Law Fraud,' the substance of the allegations supporting each count is the same."). Therefore, because Plaintiffs' third cause of action does not set forth facts plausibly suggesting a claim for fraud in the execution, the parol evidence rule applies and the claim must be dismissed.

### 3. Whether Plaintiffs Have Satisfied the Heightened Pleading Standard Imposed by Fed. R. Civ. P. 9(b)

The Court finds that Plaintiffs' fraud claims must be dismissed on the alternative basis that they have failed to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted). "The purpose of Rule 9(b) is threefold–it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotation marks omitted). "We recognize and rigorously enforce these salutary purposes of Rule 9(b)." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

Here, the Complaint alleges that, "for at least several months prior to October 2014, the Defendants represented that there were over ten million pieces in the Archive, and provided this statement on the Archive's website as well as in other representations, including conversations." (Dkt. No. 1, ¶ 14 [Pls.' Compl.].)  It further alleges that, during negotiations, "Defendants knowingly, repeatedly and falsely represented to the Plaintiffs that the Archive contained over ten million items." (*Id.*, ¶ 43.)  The proposed Amended Complaint makes similar allegations (Dkt. No. 20, Attach. 5, ¶¶ 14, 47-50 [Pls.' Proposed Am. Compl.]) and further alleges that, "upon information and belief, all of the individual Defendants were aware of the material falsity as to the number of pieces in the archive which was represented . . . for a number of years on the website.  That the Defendants knew that members of the public would rely on the false representation regarding the number of pieces in the Archive." (*Id.*, ¶¶ 15-16.)[7]

Plaintiffs argue that they have satisfied the requirements of Rule 9(b) "by pleading that the fraud was made on an ongoing basis during the months leading up to the signing of the contract on October 20, 2014, by the individual Defendants' gross misrepresentation as to the number of items in the Archive."  (Dkt. No. 20, Attach. 2, at 9 [Pls.' Opp'n Mem. of Law].) However, the Court agrees with Defendants that Plaintiffs have failed to allege which individual Defendant or Defendants made the alleged misrepresentation regarding the number of items in the Brown Brothers Archive, the location or time of the alleged conversations and/or

---

[7]     The Court notes that it is difficult to identify the allegations in the proposed Amended Complaint that have been revised because Plaintiffs have failed to comply with this District's Local Rules, which require a party moving to amend a pleading to "set forth specifically the proposed amendments and identify the amendments in the proposed pleading, *either through the submission of a red-lined version of the original pleading or other equivalent means*." N.D.N.Y. L.R. 7.1(a)(4) (emphasis added).  This failure may, and does, serve as an alternative basis on which to deny Plaintiffs' cross-motion to amend.

negotiations when the misrepresentations were allegedly made (other than alleging that the misrepresentations were made during the months leading up to the execution of the contract, which is impermissibly vague), or any other specific information. *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011) ("When a claim is brought against multiple defendants, Rule 9[b] requires that a plaintiff differentiate his allegations as to each defendant and inform each defendant separately of the specific allegations.") (collecting cases); *Bezuszka v. L.A. Models, Inc.*, 04-CV-7703, 2006 WL 770526, at *13 (S.D.N.Y. Mar. 24, 2006) ("Beyond alleging that misrepresentations were made, the Complaint fails to state who made the representations. As noted above, in a multi-defendant case, generally alleging that the 'defendants' engaged in fraud falls short of the heightened standard of Rule 9[b]."); *Simon v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) (finding complaint replete with "sweeping references to defendants," but devoid of any specific references to either defendant, failed to satisfy Rule 9[b]).

Similarly, the proposed Amended Complaint's allegation that Defendants were aware of the falsity regarding the misrepresentation on their website is impermissibly vague because it is based upon "information and belief" and does not provide any additional factual allegations in support of this belief (other than that Plaintiff Caren later learned that this was untrue by conducting his own appraisal of the collection, which does not plausibly suggest that Defendants were aware that the representation was false at the time it was made). *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 539 (S.D.N.Y. 2005) ("Because Rule 9[b] requires a Plaintiff to state on the record the specific nature of the fraud, allegations of fraud may not be based upon information and belief."); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d

Cir. 1990) ("Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").  In any event, evidence of any alleged misrepresentations made on Defendants' website is barred by the parol evidence rule for the reasons discussed above in Part IV.C.1. of this Decision and Order.

Accordingly, for all of these reasons, the Court finds that Plaintiffs have failed to allege facts plausibly suggesting a claim for fraud that satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b).

### D.     Whether Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 14, Attach. 2, at 24-25 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following one point.

"In Pennsylvania, the doctrine [of] unjust enrichment is 'inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" *Cosby v. Am. Media, Inc.*, 16-CV-0508, 2016 WL 3901012, at *7 (E.D. Pa. July 15, 2016) (quoting *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 [3d Cir. 1985]).  However, Plaintiffs are correct that they may plead unjust enrichment as an alternative theory of liability in the event that the contract is found to be unenforceable.  *See Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265 (E.D. Pa. 2007) ("[Plaintiff's] claim for unjust enrichment is an appropriate alternative avenue of relief for the plaintiff to seek in the event no valid contract existed between Cornell and Borough."); *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 430 (E.D. Pa. 2015) ("The Federal Rules of Civil Procedure allow a plaintiff to

assert alternative or inconsistent legal theories. . . . Therefore, we shall not dismiss the unjust enrichment claim, even though it may not survive"); *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, 10-CV-6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011) (stating that "[p]arties are indeed permitted to pursue alternative theories of recovery based on both breach of contract and unjust enrichment," but only if "there is any question as to the validity of the contract in question").

As discussed above in Part II.B. of this Decision and Order, Plaintiffs argue that their unjust enrichment claim should survive because it would be applicable in the event that the contract is found unenforceable due to Defendants' alleged fraudulent conduct. However, because the Court has found that Plaintiffs have failed to state a claim for fraud, and has otherwise found that the contract is enforceable, the unjust enrichment claim must be dismissed. *See Palermo*, 2013 WL 314712, at *7 (stating that, "[b]ecause, absent Plaintiff's claim of fraud in the inducement, Plaintiff has not made any demonstration that the Agreement is invalid, and because a claim for unjust enrichment cannot stand where a valid contract exists, . . . Plaintiff's claim for unjust enrichment in Count II must be dismissed.").

### E. Whether Plaintiffs Should Be Permitted Leave to File and Serve an Amended Complaint

Plaintiffs' cross-motion is denied because the allegations set forth in the proposed Amended Complaint do not plausibly suggest a claim for the reasons stated throughout this Decision and Order as well as for the reasons stated in Defendants' reply memorandum of law. (Dkt. No. 21, Attach. 1, at 3-15 [Defs.' Reply Mem. of Law].) More specifically, the proposed Amended Complaint does not cure the deficiencies in the Complaint and, therefore, the claims are futile.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiffs' Complaint (Dkt. No. 14) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiffs' cross-motion seeking leave to file and serve an Amended

Complaint (Dkt. No. 20) is **<u>DENIED</u>**.

Dated: September 23, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge